Tucker, P.
I do not concur in the opinion intimated at the bar, that the present state of the pleadings in this case, neither calls for, nor permits, a decision upon the rights of the parties before us in all their different relations. The Farmers Bank being the junior incumbrancer in point of time, and therefore prima facie inferior to the prior claimants, having filed its bill praying for the satisfaction of its demand out of the insurance fund, we cannot possibly decide upon its claim, without comparing the conflicting claims in the first place ; and if, as I apprehend, that bank must yield in point of right to the Bank of Virginia, it then becomes all important to ascertain the validity and precise extent of the rights of the Borough of Norfolk, upon which will depend the amount that can be decreed to the Farmers Bank out of the fund in question. If the borough has rights in this matter; if those rights have priority; if they entitle it not only to back rents but to interest, and to a demand of the investment of a principal sum so as to secure an interest adequate to the payment of the rent during the residue of the term; then it would seem, indeed, very probable that the struggle of the Farmers Bank has been for nothing; for nothing will remain to be paid to it. Hence it becomes absolutely necessary to look at the demands and rights of the borough in every aspect, before we scatter the funds out of which the counsel have supposed that it has a title to be secured in the payment of the rents reserved on its lease. I shall therefore proceed first to examine the title of the borough to the funds in court.
The borough being the proprietor of lands at the Town Point, proceeded in 1792 to have it divided into lots, and to lease the lots for ninety-nine years, renewable forever, reserving a ground rent payable annually by the lessee and *82 his assigns. The object on the part both of lessors and > • « • lessees, was to build upon the property, since otherwise it would be useless to the latter, and to the former the payment of the rents would be precarious. Among other lessees was one B°oze’ under whom M’Dowell, the debtor of the banks, claimed to hold. By the lease to Booze, the borough reserved a certain rent on each of the lots leased to him : and Booze, for himself, his executors, administrators and assigns covenanted, 1. to pay the rent annually : 2. to pay the taxes: 3. to improve the land in the space of three years, in such manner as that the yearly rent should be thereby sufficiently secured; and 4. on failure thereof, at the expiration of three years, that he, his executors,- administrators and assigns, would tender bond with sufficient security for the further [future, probably] payment of the yearly ground rents and taxes, until improvements should be made sufficient to secure the same; or 5. if such security should not be given within three months from the expiration of the three years, the borough might lease out the premises again, for the best price to be had, and the lessee, his executors, administrators and assigns would make good the deficiency, or be entitled to the surplus if the new lease brought a higher rent: and 6. if the rent should be in arrear at any one time for more than three years, there was a like privilege to re-let, and a like obligation on the lessee, his executors, administrators and assigns, to make good the deficiency, together with the arrears of rent. Such were the terms of this lease, which Booze parted with, it seems, in 1796, and which M’Dowell did not acquire until September 1815; from which time he became liable for the accruing rents. Previously, it seems, the covenant as to the erection of buildings had been complied with; but, if the account filed by the mayor of JYorfoUc be correct, there were, at that time, more than five years rent in arrear and unpaid; and, of course, two years before his purchase, it had been lawful for the borough to havé leased out the premises again to some other tenant.
*83 This provision, however, had not the effect of avoiding the lease, ipso facto, without some act on the part of the lessor. The answer of the borough, in this regard, misinterprets the lease. A lease for years, indeed, may be avoided without entry, if it be so provided, though a lease for life cannot. But a prudent landlord will so provide, as to give him an option to avoid the lease or not; for if it be an advantageous lease, it may be better for him to waive the right to enter and be reinvested with his old estate. So, in this case ; the draftsman has secured the power to re-let; but it was a power which might be waived or not at the lessor’s pleasure. That pleasure has never been exerted to defeat this lease, although it may at any moment be exerted. But it is obviously not their interest; for it seems the time has gone by when this property could be leased for a cent, with provisions like those of this lease.
M. ’Dowell having purchased the property, proceeded to insure it. He then, in 1817, executed a deed of trust of it to secure the Bank of Virginia, and another in October 1818, to secure another debt to the Farmers Bank. In 1822, the houses were burned down; and about the same time ho died. The insurance company are ready to pay the insurance money; and four claimants are competitors for it,—M’Dowell’s administrator (whose claim however is not urged), the Borough of Norfolk, the Bank of Virginia, and the Farmers Bank.
In the examination of the rights of the Borough of Norfolk, I shall take it for granted, for the present, that the Bank of Virginia, though a mere mortgagee, is to be looked upon as an assignee of the term; for, however the general doctrine may be on the subject, if the bank takes the benefit of the lease, it must assume its burdens, to the same extent as if it was assignee of the term out and out. But as such, it is very manifest, that, unless there is something in the lease which varies its case from that of ordinary assignees, the bank is not chargeable with any breach which occurred anterior to its title. For an assignee is only liable *84 in respect of his possession ; he bears the burden while he enjoys the benefit, and no longer. In particular, the assignee cannot be liable for rent in arrear before his title accrued. Rents due and in arrear are considered as debts severed from the realty sub modo. Moreover, it is inconsistent with any principle of the law, that one man should bind any other than his heir or his executor; and they are only bound in respect to the assets passing to them. He cannot bind his assignee; but the assignee, by the acceptance of the estate, binds himself to fulfil the obligations of the contract devolving upon him during his occupation. By law he is bound for nothing more. In the present case, however, a doubt hangs over this question from the peculiarity of the covenants. The difficulty is to say, whether the breach has occurred, or may be made to occur, in the time of the bank or not. The breach in non-payment of the rents, certainly occurred even before M’Dowell’s time; for when he purchased in September 1815, there were five years rent in arrear. Now, I have much doubt, whether M’DoweU, or those who come after him, could have been bound for the rents in arrear, or to. give security for deficiency in price, for rents to become due after their possession and’-estate might have been passed away. Booze certainly and his estate are bound, that his assigns shall do what is provided; for he is bound for the performance of all his express covenants, during the continuance of the whole lease, notwithstanding the assignments; and this, although the lessor accepted the assignee as tenant: But after assignment and acceptance, he is not liable on covenants merely implied by law. 2 Bac. Abr. Covenant. E. 4. p. 72. and the cases there cited.
The next question under these covenants, is, Whether the covenant to improve is satisfied by the erection of the first buildings, or is a continuing covenant, binding the parties to renew the buildings from time to time, in case they should be destroyed by flood or fire ? The language of the covenant affords no ground for this latter construction. If an action for breach of the covenant were brought, the plea *85 of covenants performed would be sustained, by proving that the party had once improved or built according to bis engagement. A different construction cannot be given to the lease in a court of equity. It is the misfortune of the landlord, indeed, that by the burning of the houses, the lot is reduced to its originally naked condition, and still more that the change of times has reduced its value to nothing. But the conflagration fell more heavily upon the tenant than upon the landlord, and if the holders are bound for prospective rents forever, upon three valueless lots, the change of times, which has desolated that part of the town, will prove ruinous to them. These are losses which the parties must be content to bear in proportion to their respective interests. The tenant must put up with the loss of his house, and the landlord with the loss of his rents. Neither can throw his share of the loss upon the shoulders of the other. It is said, that the houses were insured, and that the insurance money stands in the place of the buildings. And what is the se~ quitur ? Is it that the rents are to he paid out of it, or that a court of equity may compel the rebuilding out of this fund, because of its supposed relation to or substitution for the buildings which have been destroyed ? I think not. Whatever the supposed relation may be between the houses and the insurance money, the landlord has no sort of equity in this case to demand its application to the payment of arrears, or to rebuilding the premises. The tenant was neither bound to rebuild, nor to insure. Had he been so bound, the case would have been otherwise. As it is, the insurance money is the price paid by the insurance society for the consideration of the premiums and quotas advanced by M'Dowell out of his own pocket. Upon what pretext could the borough claim the benefit of this covenant purchased by M’Dowell’s funds for his own benefit, if he was not hound to purchase it for their benefit? If they had bound him to insure, or had homo the charges of insurance in proportion to their interest, the case would have been widely different. As they did not, it would be iniquity in *86 stead of equity, to take from him what has been acquired , , . ¶ by his own advances.
If the case, then, stood solely upon the original lease, and there was nothing in the deed of trust to the bank, which cou^ enure to the benefit of the borough, I should be clearly of opinion that the borough had no rights whatever in relation to this fund. But that deed, I conceive, changes the whole aspect of the case, and would have rendered unnecessary an investigation of the questions I have been considering, but that the earnest discussion of them at the bar, forbad that they should be passed over in silence.
What, then, were the rights and obligations of the Bank of Virginia? By the operation of the deed of trust, the bank became assignee of M’Dowell of the lease; for it seems to be now settled, that when a party takes an assignment of lease by way of mortgage, the whole interest passes to him, and he becomes liable on the covenant for payment of rent, though he has never occupied or become possessed in fact: Eaton v. Jaques, which had determined otherwise, is now considered as not rightly decided; Williams v. Bosanquet, 1 Brod. &s Bing. 238. This case is certainly in strict analogy to the doctrines of courts of law, which look upon a mortgage as the conveyance of the title, and not as a mere security for money. And as they also consider the mortgagor as tenant at will only of the mortgagee, the mortgagee must be the tenant for years, unless the estate for years is gone by the assignment, which cannot be. In this case, moreover, the Bank of Virginia is before the court, claiming the benefit of this lease, and demanding to be paid its debt out of funds to which it could have no title except as assignee of the lease; and if they take the benefit, they must be content to bear the burden. But this is not all. When M’Dowell encumbered this property to the Bank of Virginia, it was a valuable tenement. Its insurance amounted to 7000 dollars. M’Dowell was aware, that by the terms of the lease under which he held, the Borough of Norfolk had a right, if the rent was three years in arrear, to re-let *87 the tenement upon such terms as they could, and to hold _ . M . /*íii . him responsible, moreover, lor the back rents accruing in his own time at least. He, therefore, expressly provides in the deed of trust for the rights of the borough. He assigns the premises to the trustees,—they or their assigns paying the ground rents and performing all the stipulations and covenants in the original deed of lease for the said land contained, and required to be done and performed on the part of the lessee. Is this a covenant ? Then the trustees of the bank covenant, that they will perform all that the original lessee was bound to do and perform. Is it a condition ? Then they took the estate upon the condition that they should do and perform all that he was hound to do and perform. Is it a trust ? Then this deed enures to the Borough of Norfolk, as a security for the payment of the ground rents, and the performance of all the stipulations and covenants in the original lease, required to be done and performed on the part of the lessee. One of these is, that if the rent be behind for three years, the landlord may re-let ; and upon re-letting, the lessee bound himself to pay up and make good the deficiency, together with the arrears of rents and taxes. This obligation, then, rests upon the assignees here. The rent is now three years and more in arrear; and in the language of the books, having been due then, and there having been no tender, it lias been due and payable every day since; 6 Bac. Abr. 29. The borough may therefore now, at its pleasure enter and re-let. If it do so, it is obvious the property will bring nothing, and the assignees of the term, who have assumed to do and perform what the lessee had bound himself to do, will be bound to pay up and make good the deficiency, together with the arrears of rent. The arrears of rent, and the future payment of the rents stipulated, are thus secured by this deed of trust. The consciences of the trustees for the bank, are as much affected by this part of the undertaking, as by any other. Indeed, from the language of the deed, this is anterior to all others; for provision must be made for the pay *88 ment of past and future rents, before the bank can take any thing. This may be effected by decreeing the amount of the rents due, and that the Bank of Virginia be permitted to retain a capital sum equivalent to the production of an interest equal to the annual rents, or in some other way,— leaving this matter, however, to be arranged by the court of chancery, upon the principles I have laid down.
With respect to interest on the rents in arrear, thq. court is of opinion, that no interest whatever should have been allowed.
A few words are now necessary as to the rights of the Bank of Virginia. As assignees of the term, it would have been clearly entitled to the benefit of the policy of insurance, which is a covenant real, running with, and entered into for the purpose of upholding, the estate, even if there had been no provision on this subject in the insurance regulations. These however expressly provide for the case, and that the mortgagee shall be paid out of the insurance money. As against M’Dowell’s estate, therefore, there can be no difficulty.
But it is contended for the Farmers Bank, that the lien of the deed of trust of the Bank of Virginia, did not extend to any note renewed after the 1st March 1818. To this it might be a sufficient answer, that it indisputably extended to the note that was due and unpaid on the 1st of March 1818; and, to say the least, it is questionable, whether the new credit ought in equity to be considered as a discharge of the debt. Equity looks to the substance, not to the forms, of things. Equity sees that when a dealer at bank pays off a note by renewal, the debt is the same; the debt remains unpaid, and the credit only is extended. The Farmers Bank, conversant with such transactions, must also have known this. It had full notice of the deed of trust to the Bank of Virginia, and therefore stands, as to this question, precisely in the shoes of M’Dowell. It knew the contents of the deed, and was bound to know the legal operation of it. If it did not know that the note was re *89 newed, then as the debt was not paid, it knew there was a lien for its amount. Had it inquired, it would have learned, indeed, that there were subsequent renewals; but it would have found also that the debt was not paid; and it was hound to know the legal inference from that fact. It was bound to know, that until it was paid, M’Dowell could not be received to say that the additional indulgence granted by the bank, discharged the lien. Upon what equity could he have demanded a reconveyance of the legal title, before the payment of the debt, which it was conveyed to secure? Upon none. The property would have been bound in his hands, and it is equally bound in the hands of the subsequent incumbrancer, with full notice of the prior lien.
In this opinion of the president, the other judges concurred. And the decree of the court was as follows:
“ The court is of opinion, that by the deed of trust executed by II. M’Dowell deceased to the trustees of the Hank of Virginia, that bank became entitled to the benefit of the insurance fund, subject nevertheless to the obligation of discharging the arrears of rent on the leasehold premises, and to the further obligation of paying and discharging all future rents which may accrue during the continuance of the lease; that the rents in arrear should, therefore, not only have been decreed to be paid by the said bank, but provision should have been made for securing the payment of future rents; that this should have been effected, either by decreeing, that the said bank should retain, or should invest, so much of the said fund as would be equivalent to the production of an interest equal to the annual rents, or in such other way as might be deemed most convenient and advisable; and that the decree is, therefore, erroneous in having made no such provision: that, under the circumstances of this case, no interest whatever ought to have been allowed upon the rents in arrear; and that the decree is accordingly erroneous in allowing such interest: that the insurance fund ought to be applied, 1. to the satisfaction of *90 the rents in arrear and unpaid on the leasehold premises; 2. to making a provision for future rents; 3. to the satisfaction of the debt secured by the deed of trust to the Bank of Virginia; 4. to the satisfaction of the debt secured by the deed of trust to the Farmers Bank; and the residue, if any, ought to be paid over to the administrator of M’Dowell. Therefore, it is decreed &,c. that the said decree be reversed and annulled, and that the appellants pay to the appellees, as the parties substantially prevailing, their costs &c. and that the cause'be remanded &c.”